RECORD NUMBER: 13-4664

# United States Court of Appeals

*for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

SANTOS ANIBAL CABALLER FERNANDEZ, a/k/a Garra,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

# OPENING BRIEF OF APPELLANT

**DAVID Q. BURGESS**
**LAW OFFICE OF DAVID Q. BURGESS**
**525 North Tryon Street**
**Suite 1600**
**Charlotte, NC 28202**
**(704) 377-9800**

*Counsel for Appellant*

CP  COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

Table of Authorities ............................................................................. iii

Statement of Jurisdiction.................................................................... 1

Statement of the Issues..................................................................... 1

Statement of the Case...................................................................... 2

    A.    Statement of the Case ........................................................ 2
    B.    Statement of Facts ............................................................. 5

Summary of the Argument................................................................. 8

Argument.......................................................................................... 9

    A.    The District Court Erred In Its Legal Conclusion That
        Caballero Aided And Abetted Tigre's Murder Of Mayo
        Because That Legal Conclusion Is Not Supported By The
        District Court's Findings Of Fact....................................... 9

        1.    Standard Of Appellate Review ................................ 9
        2.    Discussion of the Issue............................................ 9

    B.    The District Court Erred In Its Legal Conclusion That
        Caballero Conspired With Tigre To Murder Mayo Because
        That Legal Conclusion Is Not Supported By The District
        Court's Findings Of Fact.................................................. 14

        1.    Standard Of Appellate Review .............................. 14
        2.    Discussion of the Issue.......................................... 14

    C.    The District Court's Above-The-Guidelines Sentence Of
        135 Months On Counts One And Fifty Three Was
        Substantively Unreasonable ........................................... 15

        1.    Standard Of Appellate Review .............................. 15
        2.    Discussion of the Issue.......................................... 15

Conclusion ............................................................................................. 16

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States*,
    552 U.S. 38, 128 S. Ct. 586 (2007) ........................................................... 15

*Milgram v. Loew's, Inc.*,
    192 F.2d 579 (3rd Cir. 1951) ........................................................... 14

*Rolf v. Blyth, Eastman Dillon & Co.*,
    637 F.2d 77 (2nd Cir. 1980) ........................................................... 9

*United States v. Abu Ali*,
    528 F.3d 210 (4th Cir. 2008) ........................................................... 9, 14

*United States v. Burgos*,
    94 F.3d 849 (4th Cir. 1996) ........................................................... 14

*United States v. Caballero Fernandez*,
    526 Fed. Appx. 270, 2103 U.S. App. LEXIS 9685,
    2013 WL 1960642 (4th Cir. May 14, 2013) ........................................................... 2

*United States v. Fulk*,
    875 F. Supp. 2d 535 (D. S.C. 2010) ........................................................... 10

*United States v. Garrison*,
    527 F.2d 998 (8th Cir. 1975) ........................................................... 9

*United States v. Horton*,
    921 F.2d 540 (4th Cir. 1990) ........................................................... 10, 12

*United States v. Leake*,
    642 F.2d 715 (4th Cir. 1981) ........................................................... 10

*United States v. Martinez*,
    555 F.2d 1269 (5th Cir. 1977) ........................................................... 10, 12

*United States v. Moye*,
    422 F.3d 207 (4th Cir. 2005) ........................................................... 10, 13

*United States v. Pino*,
608 F.2d 1001 (4th Cir. 1979) ........................................................ 10

*United States v. Williams*,
341 U.S. 58 (1951)................................................................ 10, 12

*United States v. Winstead*,
708 F.2d 925 (4th Cir. 1983) ......................................... 9, 10, 11

**Rules, Statutes and Other Authorities**

18 U.S.C. § 922(g) (2)................................................................ 3

18 U.S.C. § 922(g)(5)................................................................ 3

18 U.S.C. § 1962 ................................................................ 3

18 U.S.C. § 3231 ................................................................ 1

28 U.S.C. § 1291 ................................................................ 1

## I.    STATEMENT OF JURISDICTION

The district court's subject matter jurisdiction derived from 18 U.S.C. § 3231.  An Amended Judgment was entered on August 28, 2013.  (J.A. 2545.)  The Amended Judgment is a final judgment that disposes of all claims.  Notice of Appeal was filed on September 5, 2011.  (J.A. 2551.)  This Court's jurisdiction to review the Judgment derives from 28 U.S.C. § 1291.

## II.    STATEMENT OF THE ISSUES

1.    Did the district court err in its legal conclusion that Appellant aided and abetted murder?

2.    Did the district court err in its legal conclusion that Appellant conspired with his co-defendant to commit murder?

3.    Where Appellant's conviction for Accessory after the Fact to Murder was reversed by this Court and the sentence on that conviction was a within-the-guidelines sentence that was approximately midway through the guideline range, was the sentence on the remaining convictions substantively unreasonable where it was 93% above the bottom of the applicable guideline range and 69% above the top of the guideline range?

1

## III.  STATEMENT OF THE CASE

### A.    Statement of the Case

On May 14, 2013, this Court issued its decision reversing Appellant Santos Anibal Caballero Fernandez's ("Caballero" or "Garra") Count 53 conviction for accessory after the fact to the murder of Ulysses Mayo ("Mayo"), which was committed by Elvin Fernandez Gradis ("Tigre"), on grounds that "even construing the evidence in a light most favorable to the government, no rational fact-finder could have found that Appellant Caballero Fernandez *knew* that Ibarra was dead or dying during the relevant time period."  *United States v. Caballero Fernandez*, 526 Fed. Appx. 270, 280-81, 2103 U.S. App. LEXIS 9685, 2013 WL 1960642 (4th Cir. May 14, 2013) (emphasis in original.)

In so doing, this Court first emphasized that Caballero's involvement in the murder was limited, "at most, [to] Appellant Caballero . . . standing next to the car when shots were fired . . . ." and that the car sped away so quickly that had no opportunity to observe whether a murder had occurred or not.  *Id.* at 281. Secondly, this Court noted that Fernandez was only "standing a few feet away at the time of the shooting."  *Id.*  Finally, this Court pointed out "that the fact that Appellant Caballero Fernandez was a passenger in a car where police found the murder weapon a month after Mayo was killed is not sufficient to support his conviction.  There is no indication that Appellant Caballero Fernandez owned the

car in which the gun was found nor is there any evidence that the weapon was actually in his possession. Indeed, there were five other people in the car." *Id.* 281.

Following this Court's reversal of Caballero's conviction on Count 53, Caballero's remaining convictions were on Count One, conspiracy to violate 18 U.S.C. § 1962, and Count Eight, possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5) & (2).

At Caballero's March 4, 2011, original sentencing hearing on the subsequently reversed Count 53 conviction, the district court sentenced him to a within-guidelines sentence of 150 months, approximately midway through the guideline range of 135 to 168 months. (J.A. 2489, lines 3-4; J.A. 2496, lines 6-9)

At resentencing, however, the district court sentenced Caballero to an above-guideline sentence of 135 months, which is 93% above the bottom of the applicable guideline range and 69% above the top of the guideline range of 70 to 87 months. (J.A. 2513, lines 7-14; J.A. 2534, lines 16-18.)

The district court based its decision to deviate from its previous within-guidelines sentence on grounds that Caballero both aided and abetted Tigre's killing of Mayo and conspired with Tigre to kill Mayo. (J.A. 2539, lines 13-16.) Indeed, in the district court's view, "the evidence show[ed] that the Defendant was far more involved than an accessory after the fact." (J.A. 2538, lines 21-23.) The Government, however, never even alleged any conduct beyond accessory after the

3

fact and Caballero was neither indicted for aiding and abetting Tigre's killing of Mayo nor for conspiring with Tigre to kill Mayo.

The district court pointed to the following findings of fact as support for its legal conclusion that Caballero both aided and abetted Tigre's killing of Mayo and conspired with Tigre to kill Mayo.

Earlier in the day of the incident in question, there was a guy wearing a red hat (the official color of an MS-13 rival gang) and "*Tigre* walked up to the man, put a gun to his head and instructed him to remove the hat," saying that there might be a problem if Caballero saw the hat.   (J.A. 2530, lines 2-7; J.A. 2536, lines 21-24.) (Emphasis added.)  However, there was no evidence that Caballero was in the area, was aware of, or was involved in his conduct by Tigre.

Later that day, *Tigre* displayed a handgun and a person at the party confronted him about having the weapon.  (J.A. 2536-37, lines 25, 1.)  Fernandez asked the person who confronted Tigre, "who would have a problem with that?" (J.A. 2537, lines 1-2.)

At some point, *Tigre* remarked to a witness and Fernandez that "it smelled like death."  (J.A. 2537, lines 3-4.)

Then, around ten p.m., Ruben Ibarra ("Ibarra"), wearing a red shirt, arrived at the party in a car that he is driving with Mayo in the passenger seat.  (J.A. 2530, lines 8-10.)  Caballero saw Ibarra and asked, "What's up?"  (J.A. 2530, lines 10-

4

11.)  Ibarra does not respond and then goes inside the house.  (J.A. 2530, lines 10-12.)

Ibarra leaves and returns to the car where his cousin is still sitting in the passenger seat.  (J.A. 2530, lines 2-7.)  Tigre and Fernandez then walked up to the passenger side window where Mayo is sitting.  (J.A. 2530, lines 2-7.)  "*Tigre* bangs on the window and yells at Mayo to roll down the window.  Tigre's standing next to the car. The window is broken and they can't roll it down. Tigre pulled a gun from his waistband yelled, "Dog, roll down the window," and then suddenly fired the gun.  (J.A. 2530, lines 18-19.)  Tigre was standing about a step behind Caballero, to his right, when he fired the shots.  (J.A. 2039, lines 1-3, 8-11.)

After that, Caballero says to a witness, "Bitch, you know those guys were 18th Street.  Why did you bring them here?"  (J.A. 2530, lines 18-19.)  Fernandez then drove Tigre away from the scene of the shooting.  (J.A. 2516, lines 13-14.)

"[M]aybe a month later, the murder weapon is found in the car which Mr. Garra is driving in."  (J.A. 2516, lines 14-16.)

The district court's Amended Judgment was entered on August 28, 2013. (J.A. 2545.)  Caballero's Notice of Appeal was filed on September 5, 2011.  (J.A. 2551.)

## B.    Statement of the Facts

On April 12, 2008, a party was held at 410 Belton Street in Charlotte, NC.

(J.A. 1996-97.) The house at 410 Belton Street was an illegal bar at which the owner sold beer and food. (J.A. 2157, lines 18-20.) Caballero and Tigre were at the party. (J.A. 2025, lines 17-2; 2121-22, lines 24-25, 1-3.)

Earlier in the day of the incident in question, there was a guy wearing a red hat (the official color of an MS-13 rival gang) and "*Tigre* walked up to the man, put a gun to his head and instructed him to remove the hat," saying that there might be a problem if Caballero saw the hat. (J.A. 2530, lines 2-7; J.A. 2536, lines 21-24.) (Emphasis added.) However, there was no evidence that Caballero was in the area, was aware of, or was involved in his conduct by Tigre.

Later that day, *Tigre* displayed a handgun and a person at the party confronted him about having the weapon. (J.A. 2536-37, lines 25, 1.) Fernandez asked the person who confronted Tigre, "who would have a problem with that?" (J.A. 2537, lines 1-2.)

At some point, *Tigre* remarked to a witness and Fernandez that "it smelled like death." (J.A. 2537, lines 3-4.)

Ibarra and Mayo arrived at the party by car at about 11:00 p.m. (J.A. 2086, lines 8-9.) Ibarra was the driver and Mayo was in the front passenger seat. (J.A. 2086-87, lines 21-22, 1.)

Ibarra parked the car on the street, with the passenger side of the car facing the house. (J.A. 2086-87, lines 23-25, 1-4.) "[I]t was kind of dark at that time."

6

(J.A. 2086, line 13.)

Ibarra was wearing a red shirt.  (J.A. 2530, lines 8-10.)  Caballero saw Ibarra and asked, "What's up?"  (J.A. 2530, lines 10-11.)  Ibarra does not respond and then goes inside the house.  (J.A. 2530, lines 10-12.)

Ibarra went inside the house.  (J.A. 2087-88, lines 21-25, 1-7.)  Mayo stayed in the car.  (J.A. 2088, lines 2-3.)  Ibarra left the engine running.  (J.A. 2088, lines 3-5.)

Shortly thereafter, Ibarra left the house and went back to the car and got into the driver's seat.  (J.A. 2089, lines 2-5, 10-12.)  Caballero and Tigre walked to the front passenger side of the car.  (J.A. 2038-39, lines 17-25, 1-7.)  Caballero arrived first.  (J.A. 2038, lines 21-25.)  The engine was still running.  (J.A. 2088, lines 3-5.)  "The car was kind of low."  (J.A. 2038, lines 10-11)  A person had to bend down to look through the window to see into the car.  .  (J.A. 2037-38, lines 25, 1-3)  "*Tigre* bang[ed] on the window and yell[ed] at Mayo to roll down the window. "Tigre [then] pulled a gun from his waistband yelled, 'Dog, roll down the window,' and then fired the gun.  (J.A. 2530, lines 18-19.)  Tigre was standing about a step behind Caballero, to his right, when he fired the shots.  (J.A. 2039, lines 1-3, 8-11.)

"As soon as the gun made noise, [Ibarra] sped away from their fast."  (J.A. 2041, lines 17-18.)  "[A]s the car was leaving, [Tigre] shot four more times until he

broke the back windshield." (J.A. 2147, lines 19-20.)

After that, Caballero says to a witness, "Bitch, you know those guys were 18th Street. Why did you bring them here?" (J.A. 2530, lines 18-19.) Fernandez then drove Tigre away from the scene of the shooting. (J.A. 2516, lines 13-14.)

Caballero never again saw Mayo after he and Ibarra sped away in Ibarra's car.

"[M]aybe a month later, the murder weapon is found in the car which Mr. Garra is driving in." (J.A. 2516, lines 14-16.)

## IV.    SUMMARY OF THE ARGUMENT

The district court erred in its legal conclusion that Caballero was an aider and abettor to Tigre's murder of Mayo; thus, its above-guidelines sentence based on that erroneous legal conclusion is unreasonable.

The district court erred in its legal conclusion that Caballero was a conspirator to Tigre's murder of Mayo; thus, its above-guidelines sentence based on that erroneous legal conclusion is unreasonable.

The district court's sentence of 135 months on Counts One and Eight is substantively unreasonable. The applicable guideline range was 70 to 87 months. The district court sentenced Caballero to 135 months, which is 93% above the bottom of the applicable guideline range and 69% above the top of the guideline range; conversely, the district court's original decision was to sentence Caballero

to a within-guidelines sentence of 150 months that was approximately midway through the guideline range of 135 to 168 months.

## V.    ARGUMENT

### A.    The District Court Erred In Its Legal Conclusion That Caballero Aided And Abetted Tigre's Murder Of Mayo Because That Legal Conclusion Is Not Supported By The District Court's Findings Of Fact.

#### 1.    Standard Of Appellate Review

"As always, when considering a sentence's reasonableness, we review the district court's legal conclusions *de novo* . . . ." *United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008).

#### 2.    Discussion Of The Issue

That a defendant's conduct constitutes aiding and abetting is a conclusion of law. *Rolf v. Blyth, Eastman Dillon & Co.*, 637 F.2d 77 (2nd Cir. 1980).

First, as a threshold matter, a defendant must, of course, "be aware of the [principal's] criminal intent" in order to be an aider and abettor of the offense. *United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983). "[K]nowledge is an essential element of the crime of aiding and abetting." *United States v. Garrison,* 527 F.2d 998, 999 (8th Cir. 1975).

But mere awareness alone of the principal's criminal is not enough. The defendant must also have "shared in the [principal's] criminal intent . . . ." *Winstead*, 708 F.2d at 927. "Aiding and abetting requires some type of specific

9

intent to help bring about the crime." *United States v. Fulk*, 875 F. Supp. 2d 535, 587 (D. S.C. 2010). *See also United States v. Leake*, 642 F.2d 715, 720 (4th Cir. 1981).

Second, the defendant must have "knowingly associated himself with . . . the criminal venture." *Winstead*, 708 F.2d at 927. He must "participate in it as in something that he wishes to bring about [and] seek by his action to make it succeed." *United States v. Pino*, 608 F.2d 1001 (4th Cir. 1979).

However, "[m]ere association with a criminal, standing alone, is not enough to convict." *United States v. Martinez*, 555 F.2d 1269, 1271 (5th Cir. 1977). Moreover, "[t]he mere presence of a defendant where a crime is being committed *even coupled with knowledge by the defendant that a crime is being committed or the mere acquiescence by a defendant in the criminal conduct of others even with guilty knowledge is not sufficient to establish aiding and abetting*." *United States v. Moye*, 422 F.3d 207, 217 (4th Cir. 2005) (emphasis added)

Instead, the defendant must have "participate[ed] in it as in something that he wishe[d] to bring about [and sought] by his action to make it succeed." *United Pino*, 608 F.2d 1001. "Simply put, 'aiding and abetting means to assist the perpetrator of the crime.'" *United States v. Horton*, 921 F.2d 540 (4th Cir. 1990) (*quoting United States v. Williams*, 341 U.S. 58 (1951)).

### a.    The Facts Do Not Show That Caballero Was Aware Of Tigre's Intent To Murder Mayo.

As a threshold matter, aiding and abetting requires that the defendant "be aware of the [principal's] criminal intent . . . ." *Winstead*, 708 F.2d at 927.  In this case, there are no facts whatsoever that show that Caballero was aware of Tigre's intent to shoot Mayo.  Tigre did not have the gun in his hand when he and Caballero approached the car.  Instead, Tigre did not pull out the gun until seconds before he suddenly, and without warning, fired the gun.  In fact, it is not clear that Tigre even formed the intent to fire the weapon until Mayo did not comply with his demand that Mayo put the window down.  The fact that Caballero, just after the shooting, asked a witness why she brought a rival gang member to the party simply does not show that he was aware that Tigre was going to shoot Mayo.

### b.    The Facts Do Not Show That Caballero Shared In Tigre's Intent To Kill Mayo.

Simply put, Caballero could not have shared in Tigre's criminal intent to kill Mayo because he was not aware of any such intent.  *Winstead*, 708 F.2d at 927.

### c.    The Facts Do Not Show That Caballero Participated In Tigre's Killing Of Mayo As Something He Wished to Bring About Or That He Took Any Actions To Make It Succeed.

Even if there were facts to show that Caballero not only was aware of Tigre's criminal intent, but also shared in that intent, there are no facts whatsoever as to any actions taken by Caballero that show that he participated in the killing as

something that he wished to bring about or that he took any actions to make it succeed.  Instead, Tigre's killing of Mayo happened suddenly, and without warning, such that Caballero simply did not see it coming.  Thus, he could not have participated in something that he did not even know was going to happen.

Given that he did not know that Tigre was going to suddenly pull a gun and shoot Mayo, it follows that Caballero did not do anything to assist Tigre in his killing of Mayo.  *United States v. Horton*, 921 F.2d 540 (4th Cir. 1990) ("Simply put, 'aiding and abetting means to assist the perpetrator of the crime.'") (*quoting United States v. Williams*, 341 U.S. 58 (1951)).

The fact that approximately one month after the shooting Caballero, along with five other people, was found in a vehicle that contained the murder weapon does not show that he assisted Tigre in his killing of Mayo.

> **d.    The Fact Of Caballero's Mere Association With Tigre Does Show That Caballero Aided And Abetted Tigre In His Murder Of Mayo.**

The mere fact that Caballero and Tigre were together at times during the party, and Caballero may have seen Tigre with the murder weapon or heard him say something about it smelling like death, also does not make him an aider and abettor of Tigre's killing of Mayo.  *United States v. Martinez*, 555 F.2d 1269, 1271 (5th Cir. 1977).  Nor does the fact that he was standing a few feet away from Tigre

when he fired the shots make him an aider and abettor:

> the mere presence of a defendant where a crime is being committed *even coupled with knowledge by the defendant that a crime is being committed or the mere acquiescence by a defendant in the criminal conduct of others even with guilty knowledge is not sufficient to establish aiding and abetting*.

*United States v. Moye*, 422 F.3d 207, 217 (4th Cir. 2005) (emphasis added)

### e. Indeed, The Government Never Even Alleged That Caballero Aided And Abetted Tigre Much Less Indicted Him For The Same.

The Government's prosecution of Caballero for his alleged role in the murder of Mayo rested solely on the theory, which it was unable to prove, that he was as an accessory after the fact to the murder. There were no allegations that he played any role in the murder prior to or during the murder. It stands to reason that, if there were sufficient facts to support the legal conclusion that Caballero was an aider and abettor of the murder, he would have been indicted on that charge, particularly given that it would have carried a greater penalty because he would have been punishable as a principal to the crime rather than a mere accessory after the fact to the crime.

**B.    The District Court Erred In Its Legal Conclusion That Caballero Conspired With Tigre To Murder Mayo Because That Legal Conclusion Is Not Supported By The District Court's Findings Of Fact.**

### 1.    Standard Of Appellate Review

"As always, when considering a sentence's reasonableness, we review the district court's legal conclusions *de novo . . . .*"  *United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008)

### 2.    Discussion Of The Issue

That a defendant was a member of a conspiracy is a conclusion of law. *Milgram v. Loew's, Inc.*, 192 F.2d 579, 590-91 (3rd Cir. 1951).

The "black letter conspiracy law requires the Government to prove: (1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective which, under the common law definition, is the doing of either an unlawful act or a lawful act by unlawful means. *United States v. Burgos*, 94 F.3d 849, 860 (4th Cir. 1996).

In the instant case, there are simply no facts whatsoever to suggest that Caballero ever agreed with Tigre to kill Mayo and thus the district court's legal conclusion that Caballero conspired with Tigre to kill Mayo was error.

Moreover, the Government's prosecution of Caballero for his alleged role in the murder of Mayo rested solely on the theory, which it was unable to prove, that

14

he was as an accessory after the fact to the murder.  There were no allegations that he conspired with Tigre to kill Mayo.  It stands to reason that, if there were sufficient facts to support the legal conclusion that Caballero was a conspirator to murder, he would have been indicted on that charge.

**C.    The District Court's Above-The-Guidelines Sentence Of 135 Months On Counts One And Fifty Three Was Substantively Unreasonable.**

**1.    Standard Of Appellate Review**

Appellate courts review sentences for substantive reasonableness under an abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, at 41, 128 S. Ct. 586 at 591 (2007).

**2.    Discussion Of The Issue**

This case is different than the typical case involving the issue whether an above-guidelines sentence is unreasonable because here the sentence was imposed after a within-guidelines sentence on a conviction that was reversed on appeal on grounds of insufficient evidence.

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for a district court in determining the appropriate sentence.  *Id.* at 49, 596.

"[T]he extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant." *Id.* at 41, 591.  If the district

court judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50, 597. A "major departure should be supported by a more significant justification than a minor one." *Id.* "For even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *United Id.* at 46, 594. Thus, in "reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Id.* at 47, 594-95 (2007).

In this case, the resentence of Caballero was substantively unreasonable given the extent to which the district court varied from the guideline range, 93% above the bottom of the applicable guideline range and 69% above the top of the guideline range of 70 to 87 months, in conjunction with the fact that this new sentence was an above-guideline sentence, whereas the original sentence based on the reversed conviction was a within-guideline sentence.

## VII.  CONCLUSION

This Court should reverse the district court's Amended Judgment and remand this case was resentencing.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the appellant respectfully requests oral argument in this case.

Respectfully submitted this the 18th day of February, 2014.

> */s/ David Q. Burgess*
> David Q. Burgess N.C. Bar No. 26239
> Attorney for Defendant-Appellant
> 525 N. Tryon St., Ste. 1600
> Charlotte, NC 28202
> (704) 377-9800 (office)
> (704) 377-9828 (facsimile)
> (704) 779-3909 (mobile)
> david@davidburgesslaw.com

17

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>13-4664</u>        **Caption:** <u>US v. Fernandez</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]    this brief contains _____ 3,762 _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]    this brief has been prepared in a proportionally spaced typeface using
<u>MS Word 2010</u> [*identify word processing program*] in
<u>Times New Roman, 14 point</u> [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) <u>David Q. Burgess</u>

Attorney for <u>appellant</u>

Dated: <u>2/18/2014</u>

# CERTIFICATE OF SERVICE

I certify that on <u>2/18/2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

AMY ELIZABETH RAY
OFFICE OF THE U.S. ATTORNEY
100 Otis Street
Room 233
Asheville, NC 28801
(828) 271-4661

<u>/s/ David Q. Burgess</u>

Signature

<u>2/18/2014</u>

Date